

# IN THE
# TENTH COURT OF APPEALS

### No. 10-22-00367-CR

**CHARLES DAVID WARD, JR.,**

                                            **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                            **Appellee**

---

### From the 66th District Court
### Hill County, Texas
### Trial Court No. F008-19

---

## MEMORANDUM OPINION

---

In five issues, appellant, Charles David Ward Jr., challenges his conviction for continuous sexual abuse of a child for which he received a sentence of ninety-nine years in prison. *See* TEX. PENAL CODE ANN. § 21.02. Specifically, Ward contends that: (1) the trial court erred by denying his motion for continuance; (2) the trial court erred by preventing him from presenting a record on the denial of his motion for continuance; (3) the trial court erred by admitting hearsay outcry testimony that did not comply with

article 38.072 of the Texas Code of Criminal Procedure; (4) the trial court erred by admitting extraneous-offense evidence of other child victims; and (5) the evidence is insufficient to support his conviction. Because we overrule all of Ward's issues on appeal, we affirm.

## Motion for Continuance

In his first two issues, Ward complains about the trial court's handling of his motion for continuance. Ward argues that the trial court's denial of his motion for continuance was arbitrary because the request was made due to the death of co-counsel's husband, who also was retained as an investigator to assist in trial preparation, and because the State had just provided additional discovery to the defense. Ward also argues that the trial court erred by denying him the opportunity to develop the record on the denial of his motion for continuance through cross-examination of the State's investigator, Coy West.

STANDARD OF REVIEW

The denial of a motion for continuance is within the sound discretion of the trial court, and we review a denial for an abuse of discretion. *Renteria v. State*, 206 S.W.3d 689, 699 (Tex. Crim. App. 2006); *see Gutierrez v. State*, 446 S.W.3d 36, 38 (Tex. App.—Waco 2014, pet. ref'd). An appellant claiming the erroneous denial of a motion for continuance must show: (1) the trial court erred in denying the motion for continuance; and (2) such

denial harmed him in some tangible way. *Gonzales v. State*, 304 S.W.3d 838, 843 (Tex. Crim. App. 2010).

DISCUSSION

Ward first filed a motion for continuance on June 1, 2022, which was granted. On July 11, 2022, Ward filed his second motion for continuance, noting that: (1) co-counsel's husband had passed away on July 2, 2022; (2) co-counsel's recently deceased husband had been retained as an investigator by appointment prior to his death; (3) neither of the potential experts that counsel had also consulted with would be able to assist the defense due to scheduling conflicts and a lack of experience in relevant matters; (4) "approximately Eighty-Six (86) new pieces of discovery," largely emails from the previous eight weeks, had recently been turned over by the State; and (5) the State had recently provided the defense with a witness list of sixty-six potential witnesses and filed an amended notice of outcry with other alleged victims.

At Ward's final pretrial hearing, the trial court heard arguments on Ward's second motion for continuance. No witnesses were called by either side during the hearing. At the conclusion of the arguments on the motion for continuance, the trial court denied Ward's second motion for continuance.[1]

---

[1] Prior to denying Ward's motion for continuance, the trial court noted the following:

I will say this, going back to the issue of I don't—other than—other than the one—essentially, one murder trial involving two defendants, I've never appointed two counsel on a case before, and I only did that this time just for purely just some backup for additional help. So that wasn't something that was I viewed, to be honest, as even necessary. I just

As noted earlier, an appellant claiming the erroneous denial of a motion for continuance must show not only that the trial court erred by denying the motion for continuance, but also that he was harmed in some tangible way. *See Gonzales*, 304 S.W.3d at 843. The *Gonzales* Court further emphasized the necessity of an evidentiary hearing to demonstrate both the trial court's error and any harm resulting from the denial of the motion for continuance:

As Professors Dix and Dawson point out in their treatise:

Denial of [a pretrial motion for delay or continuance] will be found an abuse of discretion only if the record shows with considerable specificity how the defendant was harmed by the absence of more preparation time than he actually had. This showing can ordinarily be made only at a hearing on a motion for new trial, because almost always only at that time will the defendant be able to produce evidence as to what additional information, evidence or witnesses the defense would have had available if the motion for delay had been granted.

Establishing harm, however, while necessary, is not a sufficient prerequisite to obtaining appellate relief. A defendant must preliminarily demonstrate that the trial court erred to deny the pretrial continuance in the first place. Professors Dix and Dawson continue:

In addition to this necessary showing of harm, an appellant must apparently also show that the trial judge's ruling on the motion was error. This most likely requires a showing that the case made for delay was so convincing that no reasonable trial judge could conclude that scheduling and other considerations as well as fairness to the State outweighed the defendant's interest in delay of the trial. Appellate courts have not addressed this, however, because

---

did it as an abundance of caution. So I absolutely understand the situation, but I, again, didn't do that because I truly thought that this was a case that deserved two counsel. I was just trying to be somewhat helpful.

convicted defendants have never [been] able to make the necessary specific showing of harm.

*Id.* at 842-43 (citing George E. Dix & Robert O. Dawson, 42 TEXAS PRACTICE: CRIMINAL PRACTICE & PROCEDURE § 28.56 (2d ed. 2001), at 532-33).

On appeal, Ward does not demonstrate how no reasonable trial judge could conclude that scheduling and other considerations, as well as fairness to the State, outweighed Ward's interest in the delay of the trial. Ward did not present sufficient evidence in the trial court to show that the trial court erred by denying his second motion for continuance or that he was harmed by the absence of more preparation time than he actually had. Indeed, the record reflects that Ward was appointed two attorneys to represent him at trial, and nothing in the record demonstrates that the remaining defense counsel was harmed by the denial of Ward's second motion for continuance. And although he filed a motion for new trial, Ward did not complain about the trial court's ruling on his second motion for continuance in his motion for new trial. *See id.* at 842-43; *see also* Dix & Dawson, 42 TEXAS PRACTICE: CRIMINAL PRACTICE & PROCEDURE § 28.56, at 532-33. Rather, Ward merely complained that the judgment is contrary to the law and the evidence. Based on the foregoing, we cannot say that the trial court abused its discretion by denying Ward's second motion for continuance. *See Gonzales*, 304 S.W.3d at 842-43; *see also Renteria*, 206 S.W.3d at 699; *Gutierrez*, 446 S.W.3d at 38.

In his second issue, Ward contends that he attempted to develop the record regarding the denial of his second motion for continuance through the cross-examination

of West, but the trial court erroneously prevented him from doing so by sustaining a relevance objection made by the State.

During the punishment hearing, the State called West to provide fingerprint analysis on prior judgments. After doing so, defense counsel asked questions of West regarding the duties of investigators. West responded that he has served as an investigator in Hill County for the defense bar and that his work included interviewing witnesses and serving subpoenas. West agreed that those tasks are valuable aspects of being an investigator. When defense counsel asked West if he believed his work is important, the State objected to the question as irrelevant, and the trial court sustained the objection, emphasizing that this testimony was not relevant to the punishment issue before the trial court.

On appeal, Ward does not cite any authority supporting his contention that the trial court erred by sustaining the State's relevance objection. The question defense counsel sought to ask is strikingly similar to a prior question regarding the value of an investigator serving subpoenas and interviewing witnesses. Moreover, Ward does not explain how this question is relevant to any punishment issue that was before the trial court. Furthermore, Ward does not explain why West or another investigator was not called to testify at the hearing on Ward's second motion for continuance. And as Professors Dix and Dawson mentioned in their treatise, the most appropriate time to present a record regarding the denial of a motion for continuance is at a hearing on a

motion for new trial.  *See Gonzales*, 304 S.W.3d at 842-43; *see also* Dix & Dawson, 42 TEXAS PRACTICE:  CRIMINAL PRACTICE & PROCEDURE § 28.56, at 532-33.  Ward did not raise this complaint in his motion for new trial.  Accordingly, we find that this complaint lacks merit.  We overrule Ward's first two issues.

### Outcry Testimony

In his third issue, Ward argues that the trial court erred by admitting hearsay testimony that did not comply with article 38.072 of the Texas Code of Criminal Procedure.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.072.  Specifically, Ward complains that the trial court abused its discretion by admitting a second outcry witness to testify about hearsay statements made by June Bond[2], the child victim in this case.

STANDARD OF REVIEW & APPLICABLE LAW

Article 38.072 of the Texas Code of Criminal Procedure, the outcry statute, governs the admissibility of certain hearsay evidence in trials for specified crimes against a child younger than fourteen years old.  *See id.*  The statute creates a hearsay exception and allows testimony of the first adult in whom the child confides regarding sexual or physical abuse.  *See id.* art. 38.072, § 2(a)(3); *see also Martinez v. State*, 178 S.W.3d 806, 810-11 (Tex. Crim. App. 2005).  The child's statement to the adult is known as the "outcry," and the adult who testifies about the child's outcry is known as the "outcry witness." *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011).  The Court of Criminal

---

[2] June Bond is a pseudonym for the child victim in this case.

Appeals has explained that under article 38.072, the proper outcry witness is the first adult person to whom the child describes the alleged offense in some discernible manner beyond general insinuations that sexual abuse occurred. *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011); *see Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990) ("[T]he statement must be more than words [that] give the general allusion that something in the area of child abuse was going on."); *see also Reyes v. State*, 274 S.W.3d 724, 727 (Tex. App.—San Antonio 2008, pet. ref'd) ("Simply put, the outcry witness is the first adult to whom the child tells 'how, when, and where' of the assault."). However, the proper outcry witness is not determined merely by comparing the statements the child gave to different individuals and then deciding which person received the most detailed statement about the offense. *See Thomas v. State*, 1 S.W.3d 138, 141 (Tex. App.—Texarkana 1999, pet. ref'd). Rather, the victim must describe the offense to the witness. *Garcia*, 792 S.W.2d at 91.

The trial court has "broad discretion" in determining the admissibility of outcry evidence. *Id.* at 92. We review a trial court's ruling on the designation of an outcry witness for an abuse of discretion. *Id.* A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). We will not reverse a trial court's ruling if it was within the zone of reasonable disagreement, and we must uphold the ruling "if it is reasonably supported by the record and is correct under any

theory of law applicable to the case." *Brito Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

DISCUSSION

In September 2018, June's mother, M.P., received a call while at work. The caller, Officer Brian Dirickson from the Comanche Police Department, wanted M.P. to bring her three children to the police station for questioning involving a sexual assault of a cousin, Z.W, allegedly perpetrated by Ward. Rather than taking her children to the police station, M.P. questioned her children if Ward "had ever done anything to them." June, who was sixteen years old at the time, quickly responded that nothing had happened. M.P.'s sons also denied that anything had happened with Ward. However, M.P. was concerned about how quickly June had responded.

The next day, when M.P. picked up June from athletics after school, M.P. again asked June if Ward had done anything to her. June quickly responded, "no." M.P. pressed further and said, "it's okay. Tell me if he's done anything to you." June got quiet and then said "Yes, mom, he did." M.P. followed up by asking "what did he do to you?" June began crying hysterically and said: "Momma, he did everything to me." M.P. asked "was it just once or what?" June responded that "he's done it a lot." June did not provide any further details, but M.P. testified that she knew what "everything" meant.

Later, the State called Christy Robinson, the former Executive Director and Forensic Interviewer at the Heart of Texas Children's Advocacy Center, to testify about

an interview she conducted with June in October 2018. During the interview, June detailed an incident in Aquilla, Texas, in Ward's red Jeep where Ward put his penis into her vagina while June's six-year-old brother was in the front seat of the Jeep. June also described an incident at her grandmother's house in Whitney, Texas, where Ward once again put his penis into her vagina. According to June, a third incident occurred at her house in Hamilton, Texas, where Ward put his penis in her vagina while touching her with his hands. June recalled that it happened on the couch while M.P. was at work and her brothers were outside playing football.

Although Ward argued that M.P. was the proper outcry witness, after hearing the testimony and the arguments of counsel, the trial court determined that M.P. was not the proper outcry witness and allowed the State to call Robinson as the outcry witness. Ward argues that this determination was erroneous.

We do not find that M.P.'s testimony provided anything beyond a general insinuation that a sexual offense had occurred. *See Lopez*, 343 S.W.3d at 140; *Deggs v. State*, 646 S.W.3d 916, 928 (Tex. App.—Waco 2022, pet. ref'd) (concluding that a police officer who took the child victim's statement that Deggs "had touched her breasts under her bikini top and on the outside of her vagina under her bikini bottoms" was the proper outcry witness because there was a discernible description of a sexual offense that had occurred, whereas a text message from the child victim to her mother that "Can you come get me. Dillon's cuz [Deggs] put his hand in my pants. He just went outside" did not

contain anything beyond a general insinuation that a sexual offense had occurred).  The trial court was well within its discretion to determine that it was not until June told Robinson about the incidents where Ward put his penis into her vagina, as well as the surrounding circumstances, that there was a discernible description of a sexual offense that had occurred.  *See Lopez*, 343 S.W.3d at 140; *see also Deggs*, 646 S.W.3d at 928; *Reyes*, 274 S.W.3d at 727 (noting that the outcry witness is the first adult to whom the child tells how, when, and where the sexual assault occurred).  Because of this, we conclude that the trial court did not abuse its discretion by finding that Robinson, not M.P., was the proper individual to testify as the outcry witness.  We overrule Ward's third issue.

## Extraneous-Offense Evidence

In his fourth issue, Ward contends that the trial court abused its discretion by admitting extraneous-offense evidence regarding the alleged sexual assault of June's cousin, Z.W., and an unrelated child, Maggie[3], by Ward.  Ward alleges that the extraneous-offense evidence could not be found to be true beyond a reasonable doubt and that evidence should have been excluded under Texas Rule of Evidence 403.  *See* TEX. R. EVID. 403.

STANDARD OF REVIEW

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard.  *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).

---

[3] Maggie is a pseudonym used by the parties to describe another child victim.

There is no abuse of discretion if the trial court's ruling is within the zone of reasonable disagreement. *De La Paz v. State*, 279 S.W.3d 336, 343-44 (Tex. Crim. App. 2009).

ARTICLE 38.37 OF THE TEXAS CODE OF CRIMINAL PROCEDURE

At the trial of a defendant accused of, among other things, continuous sexual abuse of a child, evidence of certain extraneous offenses committed by the defendant, including aggravated sexual assault of a child and indecency with a child, is admissible under section 2 of article 38.37 "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2; *Fahrni v. State*, 473 S.W.3d 486, 492 (Tex. App.—Texarkana 2015, pet. ref'd). Before evidence under article 38.37 is introduced, the trial judge must conduct a hearing outside the presence of the jury to "determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a.

Ward argues that the evidence from the hearing conducted by the trial court did not support a finding that he committed any sexual offenses against Z.W. or Maggie beyond a reasonable doubt because of inconsistencies, as well as the lack of evidence to corroborate their testimony.

In making the article 38.37, section 2-a threshold admissibility determination, the trial court was required to determine whether, if the jury were to believe the witness's

testimony, that testimony would be sufficient to prove the commission of the extraneous offense beyond a reasonable doubt. *See id.* art. 38.37, § 2-a(1); *see also Deggs*, 646 S.W.3d at 924. An alleged victim's testimony, standing alone without corroboration, can be, and was in this instance, sufficient to prove an offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; TEX. PENAL CODE ANN. §§ 21.11, 22.021(a)(1)(B)(i); *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978); *Deggs*, 646 S.W.3d at 924; *see also Mejia v. State*, No. 14-19-00432-CR, 2021 Tex. App. LEXIS 6563, at *26 (Tex. App.—Houston [14th Dist.] Aug. 10, 2021, no pet.) (mem. op., not designated for publication) ("Thus, where in the prosecution of indecency with a child by contact, the uncorroborated testimony of a child victim would be legally sufficient to support a conviction, the same uncorroborated testimony would be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt under article 38.37, § 2-a.").

We further note that in the article 38.37, section 2-a hearing, the trial court is the fact finder and as such, is the sole arbiter of the credibility of the witness and the weight to be given to her testimony. *Johnson v. State*, 571 S.W.2d 170, 173 (Tex. Crim. App. 1979); *see Deggs*, 646 S.W.3d at 924. As fact finder, the trial court resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences therefrom. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We presume that the trial court found Z.W. and Maggie's testimony to be credible and gave weight to their testimony. *See Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013); *see also Deggs*, 646 S.W.3d

at 924. Accordingly, we conclude that the trial court did not abuse its discretion following the article 38.37, section 2(b) hearing by finding that Z.W. and Maggie's testimony would be adequate to support a finding by the jury that Ward committed the extraneous offenses beyond a reasonable doubt under article 38.37, section 2-a(1). We overrule this part of Ward's fourth issue pertaining to article 38.37.

TEXAS RULE OF EVIDENCE 403

Ward also asserts that Z.W. and Maggie's testimony should have been excluded under Texas Rule of Evidence 403. Under article 38.37, evidence of extraneous offenses against other children is admissible even if such evidence would otherwise be inadmissible under Texas Rules of Evidence 404 or 405. TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). However, the admission of evidence under article 38.37 "is limited by Rule 403's balancing test, which permits admission of evidence as long as its probative value is not substantially outweighed by its potential for unfair prejudice." *Bradshaw v. State*, 466 S.W.3d 875, 882 (Tex. App.—Texarkana 2015, pet. ref'd); *see* TEX. R. EVID. 403.

Rule 403 of the Texas Rules of Evidence allows the exclusion of relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. TEX. R. EVID. 403. Ward complains on appeal that the probative value of Z.W. and Maggie's testimony was substantially outweighed by the danger of unfair prejudice.

Probative value refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence. *Valadez v. State*, No. PD-0574-19, 2022 Tex. Crim. App. LEXIS 217, at *11 (Tex. Crim. App. Mar. 30, 2022) (publish). Relevant evidence is presumed to be more probative than prejudicial. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). However, evidence may be unfairly prejudicial if it prompts the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence. *Valadez*, 2022 Tex. Crim. App. LEXIS 217, at *11. Thus, a court must balance the probative force of the proffered evidence and the proponent's need for it against any tendency of the evidence to suggest a decision on an improper basis. *Id.* at **11-12.

A trial judge has substantial discretion in balancing probative value and unfair prejudice. *See Powell v. State*, 189 S.W.3d 285, 288 (Tex. Crim. App. 2006). All testimony and physical evidence will likely be prejudicial to one party or the other. *Jones v. State*, 944 S.W.2d 642, 653 (Tex. Crim. App. 1996). It is only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value (i.e., the evidence is unfairly prejudicial) that Rule 403 is applicable. *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009).

When conducting a Rule 403 balancing test, courts should consider: (1) the evidence's probative value; (2) the proponent's need for the evidence; (3) the evidence's

potential to suggest a decision on an improper basis; (4) the evidence's tendency to distract the jury from the main issues; (5) any tendency for the jury to give the evidence undue weight because it has not been fully equipped to evaluate the evidence's probative force; and (6) the likelihood that presenting the evidence will consume an inordinate amount of time. *See Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

The probative force of Z.W.'s testimony that Ward forced her to participate in oral and vaginal sex from the ages of three to eleven while calling her "his little slut" and "his little whore" weighs in favor of admission. The same is true for Maggie, who recounted in her testimony that Ward stayed at her house when she was nine years old and that Ward touched her "chest, breast area" and vagina under her clothes, touched her "behind" over her clothes, and digitally penetrated her while they were watching the Sons of Anarchy television show. Not only was this testimony probative of Ward's character or propensity to commit sexual assaults on children, but the sexual assaults against Z.W. and Maggie occurred roughly during the same time period as the continuous sexual abuse perpetrated against June. *See Bradshaw*, 466 S.W.3d at 883 (noting that evidence of a separate sexual offense against a child admitted under article 38.37, section 2(b) is probative of a defendant's character or propensity to commit sexual assaults on children). This factor weighs in favor of admission.

As to the second factor, we find that the State demonstrated its great need for the evidence. On appeal, Ward emphasizes that June did not definitively establish the dates

for the different instances of sexual abuse in her testimony at trial and insinuates that June may have been coached given that M.P. "'kept asking and kept asking'" whether Ward "had ever done anything to them" until June gave her "the answer her mother wanted." We are mindful that "Rule 403 'should be used sparingly to exclude relevant, otherwise admissible evidence that might bear on the credibility of whether the defendant or the complainant in such 'he said, she said' cases [involving sexual assault].'" *Id.* (quoting *Hammer*, 296 S.W.3d at 562). Accordingly, we find that the second factor also weighs in favor of admission.

With respect to the third factor, we recognize that the inherently inflammatory and prejudicial nature of evidence of extraneous sexual offenses against children does tend to suggest a verdict on an improper basis. *See Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd); *see also Deggs*, 646 S.W.3d at 926.

Regarding the fourth factor, the main issue in this case was whether Ward engaged in the continuous sexual abuse of June. Similar to *Deggs*, the jury was instructed that any evidence of extraneous offenses could only be considered if the jury determined, beyond a reasonable doubt, that the extraneous offense was committed and for the purpose of determining "the state of mind of the Defendant, and the motive, opportunity, plan, knowledge, identity or absence of mistake or accident of the Defendant, if any, and the bearing the evidence has on relevant matters, including the character of the Defendant and acts performed in conformity with the character of the Defendant." *See* TEX. CODE

CRIM. PROC. ANN. art. 38.37, § 2(b); *see also Deggs*, 646 S.W.3d at 926-27. This instruction

mitigated any tendency of the extraneous-offense evidence to confuse or distract the jury

from the main issue at trial. *See Deggs*, 646 S.W.3d at 926. We find the fourth factor weighs

in favor of admission.

The fifth factor refers to evidence, such as highly technical or scientific evidence,

that might mislead the jury because it is not equipped to weigh the probative force of the

evidence. *Gigliobianco*, 210 S.W.3d at 641. Here, Z.W. and Maggie's testimony about

various sexual abuse perpetrated by Ward was neither scientific nor technical and

pertained to matters that could easily be understood by the jury. Thus, the fifth factor

weighs in favor of admission.

As to the last factor, Z.W.'s testimony about several instances of sexual abuse

perpetrated by Ward consisted of approximately ninety-seven pages of the Reporter's

Record, and Maggie's testimony about sexual abuse perpetrated by Ward consisted of

approximately fifty-two pages. In total, Z.W. and Maggie's testimony comprised

approximately 149 pages of more than 700 pages of testimony or about 21% of the

Reporter's Record. We also note that the extraneous-offense evidence was not

cumulative because it did not "merely repeat evidence already admitted." *Newton*, 301

S.W.3d at 320 n.5. Nevertheless, we conclude that this factor slightly favors exclusion.

*See Deggs*, 646 S.W.3d at 927; *Newton*, 301 S.W.3d at 321 (concluding that factor weighed

in favor of exclusion where extraneous-offense evidence amounted to 27% of the

Reporter's Record or "one full afternoon on the second day of testimony, all of the following morning, about half the next afternoon, and part of the last morning" of three and one-half days of testimony); *see also Jimenez v. State*, No. 11-17-00065-CR, 2018 Tex. App. LEXIS 5763, at **18-19 (Tex. App.—Eastland July 26, 2018, no pet.) (mem. op., not designated for publication) (concluding that factor weighed in favor of exclusion where "the time dedicated to developing the extraneous-offense evidence amounted to twenty-three pages out of seventy-five pages of testimony for the guilt/innocence phase of trial, or about thirty percent"); *cf. Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996) (concluding that factor weighed in favor of admission where extraneous-offense evidence amounted to "less than one-fifth"); *Maranda v. State*, 253 S.W.3d 762, 768 (Tex. App.—Amarillo 2007, no pet.) (concluding that factor weighed in favor of admission where extraneous-offense evidence amounted to about 10%).

The balance of the factors reflects that there is not a "clear disparity" between the danger of unfair prejudice posed by the complained-of extraneous-offense evidence and its probative value. *See Hammer*, 296 S.W.3d at 555; *see also Newton*, 301 S.W.3d at 321-22 (concluding that the trial court did not abuse its discretion by admitting extraneous-offense evidence where half of the factors favored exclusion and the other half favored admission). Thus, we cannot conclude that the trial court abused its discretion by admitting the complained-of evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b); TEX. R. EVID. 403; *Gigliobianco*, 210 S.W.3d at 641-42. We overrule Ward's fourth issue.

**Sufficiency of the Evidence**

In his fifth issue, Ward challenges the sufficiency of the evidence supporting his conviction for continuous sexual abuse of a child. In particular, Ward argues that the evidence is insufficient because June denied that anything happened to her mother on more than one occasion, and because the State failed to present evidence that more than thirty days elapsed between the alleged incidents of sexual abuse.

STANDARD OF REVIEW

The Court of Criminal Appeals has expressed our standard of review of sufficiency issues as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the

witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

Continuous Sexual Abuse of a Child

To support a conviction for continuous sexual abuse of a child, the State is not required to prove the exact dates of the sexual abuse, but it is required to show "that two or more acts of sexual abuse occurred during a period of thirty days or more." *Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.) (citing *Baez v. State*, 486 S.W.3d 592, 595 (Tex. App.—San Antonio 2016, pet. ref'd)). In addition, although the jury is not required to agree on which specific acts were committed by the defendant or the dates on which they occurred, it must unanimously agree that the defendant committed two or more acts of sexual abuse over a period of thirty days or more. Tex. Penal Code Ann. §

21.02(b)(1); *Garner*, 523 S.W.3d at 271; *Baez*, 486 S.W.3d at 595 ("The Texas Legislature 'created the offense of continuous sexual abuse of a child in response to a need to address sexual assaults against young children who are normally unable to identify the exact dates of the offenses when there are ongoing acts of sexual abuse.'" (quoting *Michell v. State*, 381 S.W.3d 554, 561 (Tex. App.—Eastland 2012, no pet.))).

THE INDICTMENT

The indictment in this case alleged that on or about August 1, 2010, through August 9, 2012, Ward committed two or more acts of sexual abuse against June during a period that was thirty or more days in duration. M.P. testified that June's birthday is in August and that June was sixteen years old in October 2018. Therefore, the implication from M.P.'s testimony is that June was born in August 2002. And as such, the indictment alleged two or more acts of sexual abuse perpetrated by Ward against June on or about June's eighth birthday through her tenth birthday.

Despite the foregoing, we note that:

> It is a longstanding rule that the State is not required to prove than an offense was committed on the date alleged in the indictment (whether or not the words 'on or about' are used) but may prove that the offense was committed on any date prior to the return of the indictment and within the period of limitations.

*Martin v. State*, 335 S.W.3d 867, 873 (Tex. App.—Austin 2011, pet. ref'd) (citing *Klein v. State*, 273 S.W.3d 297, 304 n.5 (Tex. Crim. App. 2008)); *accord Sledge v. State*, 953 S.W.3d 253, 255-56 (Tex. Crim. App. 1997).

Continuous sexual abuse of a young child has no period of limitations. *See* TEX. CODE CRIM. PROC. ANN. art. 12.01 (providing "no limitation" for "continuous sexual abuse of young child or children under Section 21.02"); *Baez*, 486 S.W.3d at 595.

In a continuous sexual abuse case, if evidentiary facts exceed the date range in the indictment, that testimony can be considered to show the continuous nature of the abuse. *See Kuhn v. State*, 393 S.W.3d 519, 525-29 (Tex. App.—Austin 2013, pet. ref'd); *Martin*, 335 S.W.3d at 876. Where the record establishes numerous sexual contacts between an accused and a victim that exceed the scope of the indictment, a jury may rationally infer that the date range element of continuous sex abuse has been met. *See Kuhn*, 393 S.W.3d at 525; *Martin*, 335 S.W.3d at 876.

DISCUSSION

June recalled Ward as a fun, goofy, loving, and kind uncle until she began to no longer trust him when she was six or seven years old. This was when Ward began driving June down deserted country roads. June struggled to recall dates for all of the incidents of sexual abuse. In any event, when asked to take "a wild guess" as to her age when the first incident of sexual abuse occurred, June replied that she "was younger than eight," possibly five or six years old. During this incident, Ward took June and her brother in his red Jeep and drove them down a country road in Aquilla, Texas. While driving, Ward instructed June to put a large Carhartt jacket over her head and watch a portable DVD player with a pornographic video playing. Eventually, they stopped. Ward ordered

June's brother to sit in the front seat with a jacket over his head and to watch the DVD player. June was instructed to lay down on the back seat. Ward exited the vehicle and placed himself in between June's knees. He pulled her pants down, moved her panties to the side, put his fingers inside June's vagina, and moved his fingers "around." When he finished, Ward got in the driver's seat and drove away.

June testified that a second incident of sexual abuse occurred after her grandparents moved from Aquilla to a new house in Whitney, Texas. At the new house, Ward chased June until he trapped her near the kitchen. Ward then directed June down the hallway into her grandmother's bedroom. June sat on the bed, and Ward pushed her "to lay back on the bed." June started crying asked Ward to stop. Ward did not say anything but refused to let her leave. He then pulled down June's pants and panties, pulled off his own pants, and "put his penis in [June's] vagina" while still holding her down. Ward moved back and forth, and June felt pain. Ward stopped when he saw the headlights from June's grandmother's truck shining through the window. When asked when this incident occurred, June could not recall the exact date.

A third incident of sexual abuse occurred at June's grandmother's house in Whitney. While June was getting a popsicle from a freezer, Ward came up from behind and "put his hand on [June's] vagina over [her] clothes."

June described another incident where Ward walked into June's bedroom and pulled down her pants to see if she had any "peach fuzz" on her vagina. June stated that

she was younger than fourteen years old and that Ward was older than seventeen years old when this occurred and that it occurred in the house in Hamilton, Texas. Ward pulled June's pants down another time to inspect for "peach fuzz" "[i]n the same house, in the living room."

Later, the State showed June State's Exhibit 2, which was a picture of her making a pie at her grandmother's house. June could not recall how old she was, but she affirmed that she was not a teenager in the picture. June further clarified that she was in elementary school at the time the picture was taken. The significance of State's Exhibit 2 is that June noted that some of the events of sexual abuse that she described as being perpetrated by Ward occurred when the looked like she did in State's Exhibit 2. Upon further questioning, June acknowledged that some of the incidents of sexual abuse happened before August 6, 2010, or, in other words, before her eighth birthday. But she also stated that some of the events of sexual abuse occurred after August 6, 2010.

In addition to the foregoing, M.P. testified that she moved the family, including June, to a house in Hamilton, when June was eight or nine years old and that they lived there for a few months. June outcried to Robinson that Ward stuck his penis inside her vagina while she lived at the house in Hamilton.

Although June was unable to articulate the exact times and dates of the sexual abuse perpetrated by Ward, there is sufficient evidence to allow the jury to determine that two or more instances of sexual abuse occurred during a period that was thirty days

or more, especially given that June noted that some of the instances occurred before and after her eighth birthday and that Robinson recounted June's outcry that at least one instance of penetration of June's vagina occurred at the house in Hamilton that June lived in for a few months when she was eight or nine years old. *See* TEX. PENAL CODE ANN. § 21.02(d) ("[M]embers of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse."); *Baez*, 486 S.W.3d at 595; *Michell*, 381 S.W.3d at 561; *see also Srader v. State*, No. 05-15-01272-CR, 2016 Tex. App. LEXIS 11482, at **8-10 (Tex. App.—Dallas Oct. 24, 2016, no pet.) (mem. op., not designated for publication) (concluding that the evidence was sufficient to support the conviction despite the victim's inability to give exact dates of sexual acts); *Cantu v. State*, No. 13-10-00270-CR, 2011 Tex. App. LEXIS 6658, at **14-16 (Tex. App.—Corpus Christi Aug. 22, 2011, pet. ref'd) (mem. op., not designated for publication) (concluding that the evidence supporting Cantu's conviction for continuous sexual abuse of a child is sufficient despite Cantu's argument that the child victims testified about a timeline in broad generalities and one of the child victims allegedly never specifically testified about sexual abuse occurring during the time period specified in the indictment). Furthermore, to the extent that June testified about other instances of sexual abuse that occurred outside the dates alleged in the indictment, the jury could rationally infer that

the date range element of continuous sex abuse had been met. *See Kuhn*, 393 S.W.3d at 525; *Martin*, 335 S.W.3d at 876.

Therefore, viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Ward sexually abused June two or more times during a period that was thirty days or more in duration. *See* TEX. PENAL CODE ANN. § 21.02; *Zuniga*, 551 S.W.3d at 732-33; *Garner*, 523 S.W.3d at 271; *Baez*, 486 S.W.3d at 595. Accordingly, we hold that the evidence is sufficient to support Ward's conviction for continuous sexual abuse of a child. *See* TEX. PENAL CODE ANN. § 21.02; *Zuniga*, 551 S.W.3d at 732-33; *Garner*, 523 S.W.3d at 271; *Baez*, 486 S.W.3d at 595. We overrule Ward's fifth issue.

## Conclusion

Having overruled all of Ward's issues on appeal, we affirm the judgment of the trial court.

STEVE SMITH
Justice

Before Chief Justice Gray,
    Justice Johnson,
    and Justice Smith
Affirmed
Opinion delivered and filed May 24, 2023
Do not publish
[CRPM]

